Mason, Ex'r, etc.; *v.* Johnson.

---

CHARLES MASON, Executor of Jesse C. Smith, deceased, Appellant, *v.* JOSEPH K. JOHNSON, Appellee.

APPEAL FROM MARSHALL.

The words "beyond seas," as used in the statute of Wills, do not extend the limitation to the State of California, that State being within the Union.

A person is not "beyond seas" who is within the national limits of the United States.

An appeal bond, by an executor, conditioned that he shall pay the debt in due course of administration, is good.

JOHNSON commenced suit against Mason, executor of Smith, in the Marshall Circuit Court.

The declaration states that Smith, in his lifetime, executed and delivered to Johnson his note, which is as follows:

Mason, Ex'r, etc., v. Johnson.

$2,893.62.                                              *Lacon, April* 10*th*, 1840.

For value received, five years from date, I promise to pay J. K. Johnson, or order, the sum of two thousand eight hundred and ninety-three 62-100 dollars in goods, or such merchandise as he, said Johnson, or bearer, may select, and if not paid when due, to be cash, on interest from date.          JESSE C. SMITH.

The declaration contains two counts on this note, and avers that Johnson was ready to receive the goods, but Smith did not have them to deliver. It states that Smith died on the 31st of July, 1850; and that Mason was appointed his executor, and letters testamentary were issued to him by the County Court of Marshall county, on the 9th day of September, A. D. 1850.

The defendant pleaded *nil debet*, and verified his plea by affidavit, denying the execution of the note by Smith.

Issue taken on this plea to the country.

2nd plea: That as to property inventoried and accounted for, etc., the plaintiff's claim was not filed in the proper court, nor presented to the executor of Jesse C. Smith, till after two years from the time of the granting of letters testamentary, etc.

Plaintiff replied, that at the time of the granting the letters testamentary, etc., plaintiff was beyond seas, to wit, in the State of California, and that he filed his claim within two years after his return from beyond seas, etc.

Demurrer to this replication overruled, and exception taken by defendant.

Defendant rejoined—

1st. That plaintiff was not beyond seas, but was in the State of California, one of the United States of America.

Issue to the country.

2nd. That at the time when, etc., plaintiff was not beyond seas, etc.

Issue to the country.

3rd. That plaintiff did not, within two years after his return from beyond seas, file his claim with the proper court.

Issue to the country.

There were several other issues raised upon pleadings, which are omitted as not coming within the scope of the opinion.

The cause was tried by a jury, which found plaintiff's debt $2,743.62, and damages $2,866.54.

The bill of exceptions shows that the first verdict found by the jury was: " We, the jury, find for the plaintiff." This verdict, the court, BANGS, Judge, presiding, refused to enter up, and sent the jury out. They came in again with the following verdict: " We, the jury, find for the plaintiff indebtedness to the amount of $2,743.62, and damages to the amount of $2,866.54, and that the note was not filed in accordance with law; " which verdict also the court refused to receive, and the

jury were again directed to retire. They did so, and returned again with the following verdict: "We, the jury, find for the plaintiff indebtedness to the amount of $2,743.62, and damages to the amount of $2,866.54." Whereupon, without request of the jury, and against objections made by the defendants, and at the plaintiff's request, the court instructed the jury that—

"The jury will find whether the note was presented to the Probate or County Court, within two years after Johnson returned from California; if he was in California.

"The presentation of the note is sufficient if it was marked filed by the clerk of the County Court, and was left among the files in his office for several weeks; and if the note was afterwards taken from the files by the plaintiff or his attorney, this did not annul the previous presentation, if it had been presented by being marked filed by the judge and left with the files by him."

Defendant objected to these instructions, and requested the court to hear argument and suggestions in relation to the same, and to the propriety of their being given, which the court refused to hear, and again sent out the jury to consider of their verdict. The jury brought in the following verdict: "We, the jury, find for the plaintiff indebtedness to the amount of $2,743.62, and damages to the amount of $2,866.54, and that the plaintiff filed the note in question within two years after his return from California." Which verdict the court directed to be entered, and entered judgment thereon.

While this case was pending, the appellee entered a motion to dismiss the appeal, because the condition of the bond filed was "that the said Charles Mason shall pay the debt in due course of administration." The motion was denied, the bond being declared sufficient by the court.

N. H. PURPLE, for Appellant.

H. M. AND J. J. WEAD, for Appellee.

CATON, C. J. The main question which we propose to consider is, the meaning of the words "beyond seas," as used in that portion of our statute of Wills which limits the time, in certain cases, within which claims against the estates of deceased persons shall be presented. These words are borrowed originally from an English statute of limitations, and have been adopted in many if not most of our sister States, and have received constructions by the courts of England and of several of the States of this Union. In Great Britain the term may have a literal application, without doing violence to the evident

11

legislative intention. There, whoever was within the four seas, was not within the words of the exemption, nor was there any great reason for believing that he was not within the intention of the act. Hence it was held that Scotland was not *beyond seas*, although beyond the jurisdiction of the English courts. The geography of this country has suggested the propriety of departing from the literal meaning of the words, and in doing so, jurisdictional or governmental limits could, with propriety, only be resorted to, as giving a definite rule of limitation to the words. We think our own legislation furnishes a safe index to the intention of our own legislature, and that is in accordance with most of the decisions of our sister States. But those decisions we do not propose to review, confining ourselves to the lights afforded at home.

In adopting a governmental or jurisdictional limit for the construction of these words, either the State or national limit may be resorted to, as seems most accordant with the intention of the law-makers. Had the same expression been used in all our statutes of limitations, we might feel much, or at least more embarrassed, in determining in what sense these words were used. But such is not the case. In every other instance, so far as we have observed, in our statutes of limitations, the limits of this State are defined as the boundaries of the exemption, instead of beyond seas. We must conclude, then, that this change of the mode of expression was made for a purpose. If, in this case, persons beyond the limits of this State, were designed to be exempted from the operation of the act, we may well presume that the same definite and certain mode of expression would have been used which is found in all other kindred acts. We must presume that a different meaning was intended to be conveyed by the use of these words, than by those in the other acts, and as we cannot presume that it was meant to make this restriction more limited than the limits of the State, we think we find the true meaning by applying it to the national limits. And we can see a reason for the more extended application of this limitation law than of the others, in the necessity of closing up and finally settling estates of deceased persons, a policy which pervades the whole of our statute of Wills. We are then prepared to hold that California is not beyond seas, within the meaning of this law; and that the limitation applied to the plaintiff in this action. We think the demurrer to the plaintiff's replication to the defendant's second plea should have been sustained. But after this demurrer was overruled, the defendant filed three rejoinders to this replication; the second of which averred that the plaintiff was not beyond seas, on which issue was taken. The evidence

sustained this rejoinder according to our construction of the law, and so substantially did the special verdict of the jury, although perhaps not so distinctly, as to authorize us to enter a judgment here upon it.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*