EUNACE CURRIE v. CONTINENTAL CASUALTY COMPANY,
Appellant.

**Insurance:** LIMITATION OF LIABILITY: "BEYOND SEAS."  A policy of
1  insurance limiting liability to injuries received within the United States, Mexico and Canada, and excluding parts of the United States beyond the seas, does not include liability for injury and death of insured in the Canal Zone on the Isthmus of Panama; as the Canal Zone is beyond seas within the meaning of the policy in suit.

**Same:** WAIVER: EVIDENCE.  A waiver is the intentional relinquish-
2  ment of a known right, and any conduct relied upon which warrants the belief that a right has been relinquished constitutes a waiver in law; and the question of waiver is usually one of fact.  In this action the questions of whether the policy sued upon was absolutely canceled, and whether the provision therein limit-

ed liability for injuries to places within the United States, is held under the evidence to be for the jury.

*Appeal from Wapello District Court.*—HON. D. M. AN-DERSON, Judge.

TUESDAY, MAY 3, 1910.

SUIT on an accident insurance policy. There was a directed verdict for the plaintiff. The defendant appeals.—*Reversed.*

*Manton Maverick* and *McNett & McNett,* for appellant.

*Jaques & Jaques,* for appellee.

SHERWIN, J.—In December, 1905, the defendant issued to Eben Currie, husband of the plaintiff, an indemnity policy in the sum of $1,000. At the time the policy issued the insured was a resident of Wapello County, Iowa, and the policy contained the following clause: "This policy covers only injuries received within the United States (not including its parts beyond the seas), Mexico and Canada." In June, 1906, Mr. Currie accepted a position as a locomotive engineer in the engineering department of the Isthmian Canal Commission, and soon thereafter went to the Isthmus of Panama and took charge of a railroad engine in the Panama Canal Zone, where he was killed in a collision in September, 1906. Mr. J. G. Sorenson was the defendant's agent who took the application for the policy, and after the deceased had gone to the Canal Zone he and the plaintiff herein had some talk with reference to the policy, the substance of which, it may fairly be inferred, was communicated to the deceased in a letter from the plaintiff. On the 27th

of July, 1906, the insured wrote to the defendant as follows: "Empire, July 27, 1906. Continental Casualty Company, Chicago, Ill.—Dear Sirs: I have been notified that my policy No. 1008021 is not of any good to me while I remain on the Isthmus of Panama. Mr. Sorenson wrote my wife at Eldon, that my policy was no use to me, as they were a clause in the policy that covered it. Now, if I have paid for something that is of no benefit which you received the last payment out of May pay, I will expect you to remit balance due the part of the year from date of notice to my wife, as I expect to stay here this year. Please let me have reply soon as I don't care to pay out money for nothing. Yours fraternally, Eben Currie. Add. Eben Currie, Empire Canal Zone, Isthmus of Panama. Please remit to Mrs. Eunace Currie, Eldon, Iowa." On August 11, 1906, the defendant wrote the insured as follows: "This company is in receipt of your favor of the 27th inst., asking for cancellation of policy 1008021. If you will present the policy at this office or send it here, it will be canceled and refund of premium will be made as provided in the short rate rider attached to it." Nothing more was done by either party before the death of Mr. Currie.

The appellant contends that the policy was not in force at the time of the death of the insured because he was then not "within the United States" within the meaning

1. INSURANCE: limitation of liability: "beyond seas."

of the clause in the policy from which we have already quoted, and because he was then "beyond the seas" within the meaning of those words as used in the policy; and, further, for the reason that the insured had canceled the policy in his letter of July 27, 1906. On the other hand, the appellee insists that the deceased was not without the United States or beyond seas when he was killed, and that, if he was, the defendant waived that provision of its policy by its letter of August 11th, and by its subsequent action.

We think there can be no serious question as to the construction that should be given the clause of the policy limiting the territorial liability. It says in so many words that it covers only injuries received "within the United States not including its parts beyond the seas." If it be conceded that the Panama Canal Zone is in any sense a part of the United States, we think it must still be said that it is "beyond the seas," within the meaning of that term and within the meaning of the language of the policy. Had the limitations been to the United States alone, a more difficult question would have been presented. The additional statement that the policy did not cover any part of the United States beyond the seas, and did cover Mexico and Canada, clearly excludes the Canal Zone on the Isthmus of Panama. It excluded all parts of the United States beyond the seas as the term would be literally construed. The term "beyond the seas" has been construed to mean different things, depending upon the evident intent of the users thereof. Thus in statutes of limitation containing an exception in favor of persons "beyond the seas" it has been held to mean "beyond or without the United States." *Davie v. Briggs,* 97 U. S. 628 (24 L. Ed. 1086). The term as used in a statute of wills was construed in like manner. *Mason v. Johnson,* 24 Ill. 159 (76 Am. Dec. 740). It has also been held to mean without the state. *Whitney's Lessee v. Webb,* 10 Ohio, 513. In England the term is understood to mean out of the realm of Great Britain, including England and Scotland. In Maine the term as used in a statute providing a penalty for transporting a minor out of the state to parts "beyond the seas" without the consent of his parents, etc., means some foreign part or place, and not merely another state. See, also, *Whitney v. Goddard,* 37 Mass. 304 (32 Am. Dec. 216). These decisions are not of special help in the instant case, however, for the reason that each contract or statute must be construed

according to its own language, and, as we have already said, we are of the opinion that the policy in question should be construed to exclude the Isthmus of Panama. The legal territorial status of the Canal Zone presents an interesting question that we need not now decide. But the Articles of Treaty between the United States and the Republic of Panama and the following decisions leave little room for doubt on the subject: *Downes v. Bidwell,* 182 U. S. 244 (21 Sup. Ct. 770, 45 L. Ed. 1088); *Rassmussen v. United States,* 197 U. S. 516 (25 Sup. Ct. 514, 49 L. Ed. 862); *Hawaii v. Mankichi,* 190 U. S. 197 (23 Sup. Ct. 787, 47 L. Ed. 1016); *Dorr v. United States,* 195 U. S. 138 (24 Sup. Ct. 808, 49 L. Ed. 128); *Ex rel. Kopel v. Bingham,* 211 U. S. 468 (29 Sup. Ct. 190, 53 L. Ed. 286); and see, also, Act April 28, 1904, chapter 1758, 33 Stat. 429 (U. S. Comp. St. Supp. 1909, page 1370).

The appellant's claim that the policy was absolutely canceled by the insured's letter of July 27th can not be sustained. The intent of the letter is uncertain enough to require a finding of fact, and it should not be said as a matter of law that it was intended to cancel the policy, or that the defendant was justified in so treating it. Mr. Currie's letter of July 27th to the appellant will bear the construction that its primary purpose was to ascertain directly from the home office of the company the effect on his policy of his residence in the Canal Zone. And, if such was the purpose of the letter, the appellant's letter in answer thereto evaded the question, and was calculated to induce the belief that the policy would remain in force unless its cancellation was effected by the means designated in the letter, to wit, its presentation at the office of the company. In other words, the insured might infer from the contents of his own letter and the appellant's answer thereto that the cancellation of the policy was optional

2. SAME:
waiver: evidence.

with him, and that, if he did not cancel it, his residence in the Canal Zone would not affect its validity. The intent of both parties as shown by their letters and conduct were questions for the jury. And, if the appellant was not warranted in treating the letter of July 27th as an absolute cancellation of the policy, its own letter in answer thereto constitutes evidence of waiver of the condition of the policy limiting liability to certain territory. A waiver is the intentional relinquishment of a known right, and any conduct relied upon which warrants the belief that such relinquishment has been made constitutes in law a waiver. May on Insurance, section 507; *Hexom v. Knights, etc.*, 140 Iowa, 41; *Walsh v. Aetna Ins. Co.*, 30 Iowa, 133; *Kimbro v. Insurance Co.*, 134 Iowa, 84. And the question of waiver is one of fact for the jury. *Taylor v. Insurance Co.*, 116 Iowa, 625.

We are of the opinion, therefore, that the court rightly refused to direct a verdict for the defendant, and should not have directed a verdict for the plaintiff. The case should have been submitted to the jury for its finding of fact on the question of waiver.—*Reversed.*